UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ADALBERTO TELLEZ LEON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:25-cv-00561-MPB-MG |
| | ) | |
| BRANDON CROWLEY, | ) | |
| PAMELA BONDI, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING PETITION FOR HABEAS CORPUS AND MOTION FOR TEMPORARY RESTRAINING ORDER**

Petitioner Adalberto Tellez Leon is detained at the Clay County Jail in Brazil, Indiana, under the authority of U.S. Immigration and Customs Enforcement ("ICE"). He filed this writ of habeas petition habeas corpus under 28 U.S.C. § 2241, seeking immediate release or, in the alternative, a prompt bond hearing pursuant to 8 U.S.C. § 1226(a), at which Respondents bear the burden of justifying their continued detention by clear and convincing evidence. Dkt. 1. Mr. Tellez Leon argues that ICE unlawfully detained him under a statute making him ineligible for bond. Respondents argue that Mr. Tellez Leon's detention is lawful and that the only available remedy, if any, is a bond hearing.

Collectively, the parties' submissions demonstrate that Mr. Tellez Leon is statutorily eligible for bond and that his continued detention without an opportunity for a bond hearing is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Therefore, the Court grants the petition to the extent that, within **seven days** of this order, **Respondents are ordered** to either: (1) afford Mr. Tellez Leon an individualized bond hearing

1

before an Immigration Judge ("IJ") pursuant to 8 U.S.C. § 1226(a); or (2) release Mr. Tellez Leon from custody, under reasonable conditions of supervision.

## I.    Background

Mr. Tellez Leon entered the United States without inspection at the U.S.-Arizona border in 2001. Dkt. 14-1 at 2 (I-213 Narrative). He was apprehended three times and granted voluntary return each time. *Id.* On March 17, 2021, Mr. Tellez Leon entered the United States again without inspection and has resided therein ever since. *Id.* On October 31, 2025, a federal agent arrested Mr. Tellez Leon in Chicago, Illinois as part of "Operation Midway Blitz" and transferred him to an ICE holding facility. *Id.* That same day, Department of Homeland Security ("DHS") issued Mr. Tellez Leon a Notice to Appear and an I-200 Warrant for Arrest. *Id.* at 3; dkt. 14-2 at 1. Mr. Tellez Leon claims that he did not receive the Notice to Appear. Dkt. 1 ¶¶ 25–26. The Notice to Appear initiates removal proceedings and charges Mr. Tellez Leon with inadmissibility under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") [8 U.S.C. § 1182(a)(6)(A)(i)] as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Dkt. 14-2 at 2.

Mr. Tellez Leon has not moved for a bond hearing because "[a]ny request for bond redetermination before EOIR is futile as the BIA recently held in a published decision that persons like Petitioner are subject to mandatory detention as applicants for admission under 8 U.S.C. § 1225(b)(2)(A)." Dkt. 1 ¶ 28.

## II.    Discussion

Mr. Tellez Leon claims that his current detention violates the INA (Count I) and the Due Process Clause of the Fifth Amendment (Count II). Dkt. 1 ¶¶ 78–84. In opposition, Respondents

make three arguments: (A) Mr. Tellez Leon's petition is premature because he has not sought a bond hearing; (B) Mr. Tellez Leon is lawfully detained under the INA pursuant to 8 U.S.C. § 1225(b)(2) because he is an unadmitted alien, and, in the alternative, (C) he is lawfully detained under the INA pursuant to 8 U.S.C. § 1226 because he has the opportunity to receive a hearing. Dkt. 14.

As discussed below, the Court grants the petition on the merits insofar as Mr. Tellez Leon seeks a prompt § 1226(a) bond hearing or immediate release.

### A.  Exhaustion of Administrative Remedies

Respondents argue that Mr. Tellez Leon's petition is premature because he has not moved for a bond hearing pursuant to § 1226(a). Dkt. 14 at 5. Mr. Tellez Leon argues that moving for a bond hearing without first filing a habeas petition would be futile because an IJ would deny his request for a bond hearing under the recent Bureau of Immigration Appeals ("BIA") decision *Matter of Yajure Hurtado* 29 I&N Dec. 216 (BIA 2025). *Hurtado* held that IJs do not have authority to hold bond hearings where the moving noncitizen is an unadmitted alien who entered the country without inspection.[1] Dkt. 1 ¶¶ 30–32. Because Mr. Tellez Leon entered the country without inspection, if he were to move for a bond hearing, an IJ would have to decline jurisdiction over the issue because the IJ is bound by BIA precedent.

Respondents do not cite a statute requiring habeas petitioners to move for a bond hearing before an IJ before seeking habeas relief. Thus, in the absence of a congressional mandate, the Seventh Circuit maintains that "'sound judicial discretion governs'" whether litigants are required to exhaust their administrative remedies before filing a habeas petition. *Gonzalez v. O'Connell*,

---

[1] As will be explained below, *Matter of Hurtado's* rationale is that noncitizens who entered without inspection are subject to the mandatory detention provision in § 1225, not the discretionary detention provision in § 1226(a).

355 F.3d 1010, 1016 (7th Cir. 2004) (quoting *McCarthy v. Madigan*, 503 U.S. 140 (1992)).

*Gonzalez* held that exhaustion is inappropriate when:

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Id.* (quoting *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002)).

In this case, requiring Mr. Tellez Leon to move for a bond hearing before filing this habeas petition would be futile because the agency has "predetermined" the issue. Respondents claim that Mr. Tellez Leon is detained under § 1225 and IJs are bound by *Hurtado's* holding that they "lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission." *Matter of Yajure Hurtado*, 29 I&N at 225. Furthermore, Respondents have not shown that there is any reason to conceive that the BIA would change its position. *See H.G.V.U. v. Smith*, 2025 WL 2962610, at *4 (N.D. Ill. Oct. 20, 2025) ("Requiring Petitioner to exhaust his remedies by attempting to appeal the denial of bond would be futile. Indeed, if Petitioner were to appeal the decision of the Detroit Immigration Judge, Petitioner would be appealing to the very agency, the BIA, that issued *Matter of Yajure Hurtado*, which stripped the Immigration Court of its jurisdiction to set bond."). Because the issue is predetermined, Mr. Tellez Leon is not required to move for a bond hearing before challenging his detention.

### B.  8 U.S.C. § 1226 and § 1225

The merits of Mr. Tellez Leon's petition revolve around the government's statutory authority to detain him while his removal proceedings remain pending. Two statutes govern the detention and removal of noncitizens: 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to

detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an IJ. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond . . . ; or
> (B) conditional parole . . ..

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8), (d)(1). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

5

While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings*, 583 U.S. at 303 (2018). Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers *shall* order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." In relevant part, it provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall be* detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

In sum, detention pursuant to § 1225 is mandatory and regulations do not provide for a bond hearing. Detention pursuant to § 1225(a) is discretionary and regulations provide for a bond hearing.

### C. Mr. Tellez Leon Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)

Mr. Tellez Leon argues that he is eligible for a bond hearing because, based on the statute's text, context, and history, he can only lawfully be detained pursuant to 8 U.S.C. § 1226(a). Dkt. 1

¶¶ 64–68. Respondents argue that Mr. Tellez Leon is subject to the broader "catchall provision" in § 1225(b)(2) because he meets the criteria. Mainly, he is an "alien . . . who has not been admitted," or an "applicant for admission" according to § 1225(a)(1). Dkt. 14 at 7. Mr. Tellez Leon replies that § 1225 properly applies to "arriving aliens" and Respondents have already determined that he is not an "arriving alien." Dkt. 16 at 3; *see also* dkt. 14-2.

Respondents' statutory argument fails because it only makes sense when § 1225(b)(2) is read in complete isolation from the rest of § 1225. Respondents argue that § 1225(b)(2) pertains to Mr. Tellez Leon because he is an "applicant for admission," who is "seeking admission," and who is "not clearly and beyond a doubt entitled to be admitted." Dkt. 14 at 8–9. Each term might pertain to Mr. Tellez Leon in isolation—he fits the criteria for an "applicant for admission" because he is an unadmitted alien; he is not clearly and beyond doubt entitled to be admitted; and he could possibly be said to be "seeking admission" because he might seek relief from his removal proceedings in the future. *See* dkt. 14 at 10.

Nevertheless, in addition to resting on speculation about Mr. Tellez Leon's intent to pursue relief from his removal proceedings, Respondents' interpretation contradicts the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (Our duty, after all, is "to construe statutes, not isolated provisions.") (internal quotation omitted). Considering § 1225 as a whole demonstrates that the most natural meaning of § 1225 is that it applies to "arriving" noncitizens attempting to enter the United States. Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and it repeatedly refers to "arriving" aliens throughout. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for

7

aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further explicitly addresses "crewm[e]n" and "stowaway[s]" in § 1225(b)(2), reflecting that Congress envisions § 1225 to apply broadly to "arriving" noncitizens—not just § 1225(b)(1). In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports. As Respondents concede, Mr. Tellez Leon "is not 'arriving' in the United States." Dkt. 14 at 8.

Respondents' argument that only § 1225(b)(1)—and not the entirety of § 1225—applies to "arriving aliens" also fails when considering the statute's prior usage and interpretation. For example, 8 C.F.R. § 235.3(c)(1) notes that "[e]xcept as otherwise provided in this chapter, any *arriving* alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section [1229a] shall be detained in accordance with section [1225(b)]." (emphasis added). Furthermore, the government previously applied section 1226(a) to unadmitted noncitizens, such as Mr. Tellez Leon, who entered the country without inspection. *See Matter of Hurtado*, 29 I&N Dec. 216 n.6. ("We acknowledge that for years Immigration Judges have conducted [section 1226(a)] bond hearings for aliens who entered the United States without inspection."). Indeed, the documents that ICE agents served to Mr. Tellez Leon convey that he was detained pursuant to § 1226(a). He was given a "Notice to Appear," and a warrant, or an I-200. *See* dkt. 14-1 at 3. As seen above, detention under § 1225 is mandatory. In contrast, the plain language of § 1226(a) authorizes arrest and detention "[o]n a warrant issued by the Attorney General." ICE's treatment of Mr. Tellez Leon makes it clear that he is detained pursuant to § 1226 and thus, eligible

for bond. *See Campos Leon v. Forestal*, No. 1:25-CV-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sept. 22, 2025) ("It is difficult to find that § 1226(a) carries any meaning if the aliens it expressly addresses—those arrested and detained pursuant to warrants—are not actually subject to its provisions."). "[T]he Government has affirmatively decided to treat" Mr. Tellez Leon "as being detained under Section 1226(a) and it cannot now be heard to change its position to claim that he is detained under Section 1225(b)." *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025) (citing *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)).

Respondents' citation to the few district court opinions that have found that noncitizens arrested in the interior were properly detained pursuant to § 1225, emphasize that DHS did not issue a warrant for their arrest and detention. *See, e.g., Sandoval v. Acuna*, 2025 WL 3048926, at *5 (W.D. La. Oct. 31, 2025) ("Petitioner does not allege that the Attorney General issued a warrant for her arrest and detention, further indicating that Petitioner is properly detained under § 1225(b) as an 'applicant for admission,' not § 1226(a)"); *Vargas Lopez v. Trump*, 2025 WL 2780351, at *7 (D. Neb. Sept. 30, 2025) ("This failure of proof of a warrant for Vargas Lopez's arrest is fatal to the Second Cause of action. Vargas Lopez has not provided this Court with the documents necessary for Vargas Lopez to be eligible for release on bond under § 1226). Only one case, *Cirrus Rojas v. Olson*, et al., No. 25-cv-1437-bhl, dkt. 20, (E.D. Wis. Oct. 31, 2025), found that a petitioner's detention fell under § 1225 despite having been issued a warrant citing § 1226 and granted bond in a previous hearing. Even still, *Cirrus Rojas* is not factually identical to this case and, in any case, is not binding on this Court.

Respondents also argue that Mr. Tellez Leon is an "applicant for admission" according to *Thuraissigiam*, 591 U.S. at 118–19, which held that a noncitizen apprehended 25 yards from the

9

border and seeking admission was not entitled to habeas relief. *Id.* at 11. But *Thuraissigiam* is legally and factually distinct from the petition. The *Thuraissigiam* Court makes the distinction clear:

> While aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause. Respondent attempted to enter the country illegally and was apprehended just 25 yards from the border. He therefore has no entitlement to procedural rights other than those afforded by statute.

*Id*. (internal citations omitted). In contrast to the *Thuraissigiam* petitioner, Mr. Tellez Leon has resided within the United States since 2001; he was not apprehended mere yards from the territorial border.

Respondents' interpretation also disregards the relationship between § 1225 and § 1226 within the INA. While § 1225 focuses on "inspection" of "arriving aliens," § 1226 pertains to the "[a]pprehension and detention of aliens." The plain language here suggests that § 1226—not § 1225—plainly applies to Mr. Tellez Leon because he is an alien, who was "apprehended" and "detained." A noncitizen "cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226." *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *4 (S.D.N.Y. Aug. 13, 2025). The provisions "can be reconciled only if they apply to different classes of aliens." *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *11 (D. Mass. Aug. 19, 2025).[2]

---

[2] A few district courts have adopted the government's prescribed interpretation by conceiving of §§ 1225 and 1226 as not mutually exclusive. *See Sandoval Acuna*, 2025 WL 3048926, at *6 ("First, many of these cases rest upon the premise that §§ 1225 and 1226 are mutually exclusive. In *Jennings*, the Supreme Court did not state that § 1225(b) applies *only* to aliens seeking entry into the United States; instead, the *Jennings* Court stated that '§ 1225(b) applies primarily to aliens seeking entry into the United States.'"); *Vargas Lopez*, 2025 WL 2780351, at *9 n.5 ("*Jennings* does not state that § 1225(b) and § 1226(a) apply to distinct groups of aliens . . . As a matter of plain language, the additional aliens to whom § 1225(b) applies are 'alien[s] present in the United States who ha[ve] not been admitted' according to the definition of 'applicants for

Last, Respondents' interpretation of § 1225(b)(2) would also make the recently enacted amendment to § 1226(c) superfluous. Courts construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009). "A basic canon of construction requires us to give meaning to every word of a statute." *Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 605 (7th Cir. 2012). Congress passed the Laken Riley Act in 2025 to amend section 1226(c) and include more classes of aliens who are ineligible for bond under § 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). One of those new classes of non-bondable aliens are aliens not admitted into the United States who were charged with specific crimes. 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A)). Under the Respondents' expansive interpretation of § 1225, the amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act. Adopting Respondents' reading would render the exceptions in § 1226(c) completely unnecessary and illogical.  "When Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies. *Rodriguez v. Bostock*, 779 F. Supp. 3d, 1256–57 (W.D. Wash. 2025) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)). Thus, a plain reading of the exception in § 1226(c) implies that § 1226 applies to noncitizens such as Mr. Tellez Leon, who have not been admitted or paroled—a group of people who may overlap with the definition of "applicant for admission" in § 1225(a)(1).

---

admission' in § 1225(a)(1). That is arguably the same group of aliens to which the Supreme Court stated § 1226(a) applies"). This Court does not find *Sandoval Acuna* or *Vargas Lopez* convincing because a noncitizen cannot be subjected to both discretionary detention and mandatory detention at the same time.

Taken together, the plain text of the statute, the statutory context, and DHS's prior usage and history demonstrate that Mr. Tellez Leon may only be lawfully detained pursuant to § 1226(a).

### D. Mr. Tellez Leon's Detention Without Opportunity for a Bond Hearing Violates § 1226

Respondents argue that Mr. Tellez Leon is being lawfully detained because he has an opportunity to receive a bond hearing before an IJ. Dkt. 14 at 12. Thus, this Court cannot review the IJ's decision due to § 1226(e), which states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* (quoting 8 U.S.C. § 1226(e)).

There is no evidence that Mr. Tellez Leon has or had an opportunity to receive a bond hearing where the IJ would make an individualized determination of his custody pursuant to 8 C.F.R. § 236.1(d)(1). Furthermore, Respondents do not cite any binding precedent applying § 1226(e) to a habeas petition seeking a bond hearing pursuant to § 1226(a). In fact, Respondents' case, *Demore v. Kim*, 583 U.S. 510 (2003), held that § 1226(e) did *not* deprive courts of habeas jurisdiction over a challenge to detention under § 1226(c) because the petitioner did not challenge a discretionary judgment or a decision, but the statutory framework permitting his detention without bail. 530 U.S. at 516–17. Similarly, Mr. Tellez Leon is not challenging a discretionary judgment—he is challenging his ongoing detention without being given the opportunity to seek a discretionary judgment regarding his custody.

In sum, Mr. Tellez Leon's detention without opportunity to request a bond hearing from an IJ who will individually determine his eligibility for bond pursuant to § 1226(a) violates the INA.

Mr. Tellez Leon is thus entitled to habeas relief because his continued detention violates ". . . the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

### III.    Scope of Relief

Mr. Tellez Leon requests immediate release from custody or, in the alternative, an individualized bond hearing where the government bears the burden of proof by clear and convincing evidence. Dkt. 1 ¶ 87. Immediate release is the customary remedy in habeas proceedings. *See Thursaissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, ordering an individualized bond hearing is appropriate here because detention under § 1226(a) is discretionary and the due process violation arises from Mr. Tellez Leon's detention without a bond hearing. Even still, the Court does not have authority to expand the procedural protections of § 1226(a) and will thus not shift the burden of proof. *See, e.g., Ali v. Achim*, 342 F. Supp. 2d 769, 775 (N.D. Ill. 2004) (declining to grant petitioner's request for periodic review and a shift of the burden of proof because the bond determination procedures in § 1226(a) and 8 C.F.R. § 1003.1(e)(8)(i) "already provide for the safeguard of individual bail determinations" and "do not violate Petitioner's procedural due process under the *Mathews* due process calculus").

### IV.    Conclusion

For the above reasons, Mr. Tellez Leon's petition for writ of habeas corpus is **granted**. Respondents' detention of Mr. Tellez Leon without an individualized bond hearing violates the violates ". . . the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

Within **seven days** of this order, Respondents must either: (1) provide Mr. Tellez Leon with an individualized bond hearing before an IJ pursuant to 8 U.S.C. § 1226(a); or (2) release Mr.

13

Tellez Leon from custody, under reasonable conditions of supervision. Respondents must document that they have provided Mr. Tellez Leon with a bond hearing pursuant to 8 U.S.C. § 1226(a) or that they have released him. Respondents **must file notice with the court within four days** of either action.

Mr. Tellez Leon's motion for temporary restraining order, dkt. [4], is **granted** to the limited extent that **Respondents shall not transfer Mr. Tellez Leon outside the jurisdiction of the United States or transfer him to federal judicial district other than those in the States of Illinois, Indiana, or Wisconsin during the pendency of this habeas petition.** *See A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1369 (2025) (citing 28 U.S.C. § 1651(a) ("[T]he Government represented on the record in federal court that it reserved the right to remove detainees after midnight. We had the power to issue injunctive relief to prevent irreparable harm to the applicants and to preserve our jurisdiction over the matter."); *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) ("The District Court had the power to preserve existing conditions while it was determining its own authority to grant injunctive relief.").

The **clerk is directed** to enter final judgment.

**SO ORDERED.**

Dated:  November 25, 2025

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

Jeffrey D. Preston
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jeffrey.preston@usdoj.gov

Liberty L. Roberts
CHURCH CHURCH HITTLE & ANTRIM (Noblesville)
lroberts@cchalaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov

Charles Wysong
Hughes Socol Piers Resnick Dym
cwysong@hsplegal.com